UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 22-CR-20563-PAS

UNITED STATES OF AMERICA,

v.

CHRISTIAN JOSE GONZALEZ,
      Defendant.
_____/

### ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR NEW TRIAL

THIS MATTER is before the Court on Defendant's timely Motion for Judgment of Acquittal or New Trial [DE 65] pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. Defendant alleges the trial evidence was insufficient to prove his knowledge that the funds in question were proceeds of criminal activity and the interest of justice[1] requires a new trial. DE 65 at 1-2. The Government responds that the evidence was more than enough to prove Defendant's knowledge of the funds' illicit source and sustain the guilty verdicts. DE 73 at 1, 6. The Court reviewed the Motion [DE 65], the Government's Response [DE 73], and the record. Because the evidence was sufficient to prove Defendant's knowledge of the funds' illicit source, Defendant's Motion must be denied.

    I.    LEGAL STANDARD

Two separate legal standards govern motions for judgment of acquittal and motions for new trial. As to the former, a district court must view the evidence in the light most favorable to the government and determine whether a reasonable jury could

---

[1] Defendant also argues that the Government's failure to call the two witnesses involved in the *Ponzi* scheme weighs in favor of granting a new trial. DE 65 at 3. Presumably, the witnesses refer to Johanna Garcia and Pavel Ruiz.

have found the defendant guilty beyond a reasonable doubt. *United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006). However, on a motion for new trial, the court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and consider the credibility of the witnesses. *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). If the court concludes that the evidence weighs sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury. *Id.* Motions for new trial based on the weight of the evidence are disfavored, and courts are to grant them sparingly, only in exceptional cases. *Id.* at 1313.

II.  BACKGROUND

After a week-long jury trial, on June 12, 2023, the jury found Defendant guilty of two counts of money laundering in violation of 18 U.S.C. § 1957 [DE 62]. The evidence showed that on December 14, 2021, Defendant withdrew $159,936 from the MJCF LLC Chase Bank account ending in 6678, on which he was the sole authorized signor. DE 58-1, Exs. 20, 21B. The evidence also showed that he then deposited $155,000 of the withdrawn funds into a new Chase account ending in 7833 that he had opened for his business, United Capital Solutions. DE 58-1, Exs. 20, 22A, 22B. These two December 14, 2021 transactions represent Counts 1 and 2 of the Indictment. DE 1 at 3.

The trial evidence focused on MJ Capital Funding ("MJ Capital"), the company at the center of the *Ponzi* scheme spearheaded by Johanna Garcia and Pavel Ruiz. DE 58-1, Exs. 1-18A, 19, 25-18; Duthil Test., Jun. 6, 2023; Rentas Test., Jun. 6, 2023.

Garcia, MJ Capital's founder, Ruiz, and their associates falsely represented to investors that MJ Capital funded Merchant Cash Advances ("MCAs"), a type of business loan offering high returns. *Id.* Defendant had years of experience brokering MCAs, and Garcia hired Defendant to set up an MCA platform for MJ Capital. DE 58-1, Exs. 23, 24. On April 19, 2021, Defendant and Garcia set up MJCF LLC, a separate company bearing the initials of MJ Capital Funding. *Id.*

The evidence also showed that on July 13, 2021, Ruiz gave Defendant a $200,000 check, which was funded almost exclusively with MJ Capital investor deposits. *Id.* It was with this check that Defendant opened the MJCF LLC Chase account ending in 6678 as charged in Count 1 of the Indictment. D'Antonio Test., Jun. 7, 2023; DE 1 at 3.

III. EVIDENCE SHOWING DEFENDANT'S KNOWLEDGE

There was ample trial evidence establishing Defendant's direct knowledge as well as his deliberate ignorance of the illicit origin of the funds involved in the two charged transactions. As to his direct knowledge, after setting up MJCF LLC but before receiving the $200,000 check, Defendant participated in a May 25, 2021 videoconference call with MJ Capital's sales agents. DE 58-1, Exs. 25-5, 25-6, 25-29. During the call, the sales agents expressed concern that MJ Capital could be a *Ponzi* scheme. DE 58-1, Ex. 25-5. In response, Defendant emphasized that MJ Capital was not a *Ponzi* scheme[2], and falsely stated that the company was thriving and had funded hundreds of business loans to date. *Id.* In reality, MJ Capital had funded only a few loans, and those few loans led to a net loss. DE 58-1, Ex. 20.

---

[2] In his Securities and Exchange Commission (SEC) testimony approximately a year later, Defendant maintained that he "wasn't involved in [Johanna Garcia's] *Ponzi* scheme. DE 58-1, Ex. 23.

3

In addition to this direct evidence, Defendant testified to the SEC that he knew on August 12, 2021 that the FBI "raided" MJ Capital and a court-appointed receiver seized the company that day. DE 58-1, Ex. 24. On September 8, 2021, the FBI first interviewed Defendant about MJ Capital, Garcia, and Ruiz at a Starbucks in Fort Lauderdale. Palomares Test., Jun. 8, 2023. Defendant thereafter evaded the FBI's phone calls and inquiries, which led to a contentious encounter between him and two FBI agents and a uniformed police officer at the airport on September 22, 2021. Palomares Test. After a tense conversation, the agents served Defendant with two grand jury subpoenas for records related to MJ Capital, Garcia, and Ruiz. DE 58-1, Exs. 42-43A. Accompanying the subpoenas was a letter informing Defendant that he was the "target" or "subject" of a federal criminal probe. *Id.*; Palomares Test.

Moreover, the SEC served Defendant with an additional subpoena for documents related to MJ Capital on October 5, 2021. DE 58-1, Ex. 25-2. The FBI also interviewed Defendant twice more about MJ Capital, Garcia, and Ruiz before the charged transactions—on October 8, 2021, and December 2, 2021. DE 58-1, Ex. 23; Palomares Test. The trial evidence showed that Defendant conducted the charged transactions with all these events in the backdrop.

IV.  ANALYSIS

Here, for the reasons discussed above, Defendant has failed to demonstrate that based on the evidence presented, no reasonable jury could find him guilty beyond a reasonable doubt. Nor has he shown that the evidence weighs so heavily against the verdicts that a serious miscarriage of justice may have occurred.

Defendant's argument regarding the Government's failure to call Garcia or Ruiz as witnesses is also without merit: he fails to explain why he could not call them as witnesses himself, or that their being called would have materially changed the outcome of the trial. *See Taylor v. Singletary*, 122 F.3d 1390, 1394 (11th Cir. 1997) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)) ("It is well-established that defendants have a Fifth and Sixth Amendment right to present witnesses that are 'both material and favorable' to their defense.").

With its exhibits and testimonial evidence, the Government was able to corroborate the timeline of relevant events, from which a jury could conclude that Defendant knew—or pretended that he did not know—the charged transactions involved criminally derived funds. Accordingly, it is

ORDERED that:

Defendant's Motion [DE 65] is DENIED.

DONE AND ORDERED in Miami, Florida, this 18 day of July, 2023.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record